[Civ. No. 3297. Fourth Dist. Nov. 8, 1945.]

ROSS CHRISTMAN MARTIN, Appellant, v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION (a Corporation), Respondent.

Fred A. Wilson for Appellant.

J. Edward Haley for Respondent.

GRIFFIN, J.—On September 10, 1936, plaintiff and appellant made written application to defendant and respondent association for a policy of health and accident insurance. The application, signed by plaintiff, contained, among others, the following questions and answers: "Q. (9) Has any ap-

plication ever been made by you for life, accident, *or* health insurance been declined? (Answer to each) No - No - No." "Q. (18) Do you hereby apply to the Mutual Benefit Health & Accident Insurance for a policy to be based upon the foregoing statement of facts and do you understand and agree that the falsity of any statement in the application shall bar the right to recovery if such false statement is made with intent to deceive or materially affect either the acceptance of the risk or the hazard assumed by the association, . . . A. Yes." By the other questions in the application defendant sought to elicit from the applicant, the plaintiff, his name, age, occupation and business; whether he had previously suffered from certain diseases, the condition of his health at the time the application was made, and generally questions which would give to the defendant association full and complete information with respect to the applicant. No physical examination was required. By the question in issue, the association sought to determine whether the applicant had previously been denied life, accident or health insurance. The question was separately answered as to each kind of insurance. It was not ambiguous, as contended by plaintiff. It merely called for information relating to simple matters of fact within the knowledge of the insured. It has been held that answers to written questions set forth in application forms relative to insurance are generally deemed material representations. (*California Western-States Life Ins. Co.* v. *Feinsten,* 15 Cal.2d 413 [101 P.2d 696, 131 A.L.R. 608].)

It is the contention of the defendant that if he had been previously rejected for any such forms of insurance, the company would then be in a position to make its own investigation to determine whether it wished to underwrite the risk or to decline it; that this question, together with the other questions, were all important in determining the insurability of the applicant and that the applicant, by his answer to question 18, affirmed that all answers were true and correct and that the statement of facts contained in the application should be the foundation upon which a policy of insurance should be issued; that the defendant relied upon these answers; that following the issuance of the policy, it was the duty of the insured to read it and if he did not correctly state the truth in the answers in the application it was then his duty to communicate the correct answers to

the insurance company; and that this was not done, citing *Telford* v. *New York Life Insurance Co.*, 9 Cal.2d 103 [69 P.2d 835].

A policy of health and accident was issued on the application and delivered to the plaintiff. It provided for total and permanent disability benefits resulting from disease or accident. The premiums were paid when due.

Plaintiff's complaint alleges in count I that on July 18, 1940, he became permanently disabled from disease and sought a recovery under the disability provision of the policy. In another count he alleges that on June 8, 1941, while traveling as a passenger in a taxicab, he suffered certain described permanent injuries as the result of an accident and sought recovery thereunder.

Defendant association admitted the due execution of the application and policy, and among other defenses alleged a false answer to question (9) in the application in that plaintiff failed to disclose that in 1916 he had been rejected for insurance by two different insurance companies; that defendant relied on the answers given and in reliance thereon issued to plaintiff the policy referred to in the complaint; that had defendant known that plaintiff failed to disclose the rejections and nonrenewals by the other companies referred to, it would have refused to issue to plaintiff its policy of insurance issued to him or any other policy of insurance. The prayer of the answer was that the court decree the policy of insurance unenforceable and that the association return to plaintiff, in accordance with its tender, the amount of premiums paid on the policy.

At the trial, plaintiff was examined under section 2055 of the Code of Civil Procedure. He testified that he signed the application but that it was not made out in his handwriting. He further testified:

"Q. (By Mr. Haley): I call your attention, doctor, to the question which appears in this photostatic copy of the application . . . in which the question is asked you: 'Has any application ever made by you for life, accident or health insurance been declined?' Answer to each: No, No, No. . . . A. I made application in Kokomo to the Equitable Life of Iowa and at that time I had all the insurance I could carry —— A. Just answer 'yes' or 'no.' A. Yes. Q. You were refused by the Equitable Life of Des Moines, Iowa? A. Yes, sir, at my request. . . . Q. Doctor, would you say

you were rejected by more than one company, more than the Equitable Life of Des Moines? A. Not to my knowledge, Mr. Haley. Q. You remember your deposition being taken in this matter, don't you, doctor? A. We have a copy of it there. . . . Q. Starting at line 5: Q. Do you remember making an application to the Great Northern Life Insurance Company in 1916 for a policy of insurance? A. Where are they located? Q. The Great Northern Life Insurance Company of Chicago. A. There are two companies that rejected me, one or two at that time. The Equitable Life of Des Moines . . . Q. You don't recall that? A. No, and I don't remember the Chicago firm, but I do remember the Iowa firm. Q. The Equitable Company of Des Moines, Iowa? A. Yes, sir. Q. Did you so testify? A. Yes, sir. Mr. Haley: That is all.''

Plaintiff further testified that the company's agent, Mr. Fox, made out the application; that the agent asked him all the questions and the answers were given as recorded, except question (9); that he told the agent ''about the time I had been turned down for *life insurance* and the doctor did it at my request because I was young and had all the insurance I could carry, and I just told the doctor to turn me down. I didn't want to be bothered with insurance agents and I had to explain that to insurance companies ever since. I have been passed physically in several companies and accepted, and I told that to Mr. Fox and he wrote 'No, no, no' on there; I told him 'yes' ''; (Italics ours); that he did not read the application before he signed it; and that he did not discover that question number (9) was so answered until the filing of the answer in this case. He then testified about his injuries and disabilities.

From this evidence the trial court found: that plaintiff was injured as a result of the accident described and was suffering from the diseases mentioned in the complaint resulting in a total disability and total loss of time; that in the written application for the policy plaintiff represented and stated that ''no application ever made by him for life, accident or health insurance had been declined''; that plaintiff failed to disclose to defendant that prior to the submission of said written application for insurance ''several applications for life, health *and* accident insurance had been rejected and declined by other companies'' (Italics ours); that defendant ''relied upon the statements contained in

said application submitted by plaintiff, and that in reliance thereon did issue the policy of insurance referred to and described in plaintiff's complaint; that by reason of the failure to disclose to defendant prior rejections by other insurance companies, defendant was and is entitled to rescind said policy of insurance so issued.'' The court then concluded that the policy was never in force or effect by reason of the misrepresentations made by plaintiff in his written application; that plaintiff take nothing by his complaint and that defendant association pay plaintiff $460 premiums paid on the policy and interest, totaling $536. Judgment was entered accordingly.

Plaintiff appealed and argues first, that the evidence does not support the finding that plaintiff failed to disclose to defendant that ''several applications for life, health *and* accident insurance had been rejected and declined by other companies.'' It will be noted that in question (9) the written application reads in the disjunctive and the finding reads in the conjunctive. We agree that the evidence does not support the finding that plaintiff failed to disclose *several* applications for life, health and accident insurance had been rejected. The finding, stated in the conjunctive, is unhappily worded. However, the evidence would support the intended finding that an application for life insurance (Equitable Life of Des Moines, Iowa) had been rejected.

It appears to us that the only question here presented is this: Would the false representation of the fact of rejection of a life insurance policy in another company bar the right to recovery under a disability and accident policy, as a matter of law, or is the question a factual one for the trial court to determine? That is, whether (1) such false statement was made with actual intent to deceive; or (2) whether it materially affected either the acceptance of the risk or the hazard assumed by the insurer. (Ins. Code, § 10380.)

The case of *Solez* v. *Zurich Gen. Acc. & Liability Ins. Co.*, 54 F.2d 523, was factually similar to the instant case. There plaintiff applied for a policy of accident insurance in which he was asked the question whether ''any accident, health or life company or association ever rejected your application.'' The plaintiff answered ''No.'' After an injury to plaintiff, an action on the policy resulted. It was discovered that plaintiff had previously made an application for a life

insurance policy which was rejected. In the trial of the action the court left it to the jury to determine whether the plaintiff had intended to deceive the defendant by the answer quoted and whether the truth, if given, would have been material to the acceptance of the risk and the hazard assumed. After discussing and disagreeing with certain holdings in *Business Men's Assurance Co. of America* v. *Campbell,* 32 F.2d 995, it stated that the materiality of the answer to the risk was of no moment, if the applicant meant to deceive, but held that the answer was not so plainly material as to hold, as a matter of law, that a directed verdict for defendant should be given. In this case a writ of certiorari was granted (May 23, 1932) (286 U.S. 538 [52 S.Ct. 639, 76 L.Ed. 1277].) On August 4, 1932, the case was dismissed by stipulation of counsel (296 U.S. 668 [57 S.Ct. 756].)

There are cases holding that when applications are of the same kind, i. e., both for life insurance or both for accident, the courts treat suppression by the insured of an earlier rejection as necessarily material to the risk and *ipso facto,* avoiding the policy. (*Aetna Life Insurance Co.* v. *Moore,* 231 U.S. 543 [34 S.Ct. 186, 58 L.Ed. 356] ; *McEwen* v. *New York Life Insurance Co.,* 23 Cal.App. 694 [139 P. 242] ; *Pierre* v. *Metropolitan Life Insurance Co.,* 22 Cal.App.2d 346 [70 P.2d 985].

In *Columbian Nat. Life Ins. Co.* v. *Harrison,* 12 F.2d 986 ; *Missouri State Life Ins. Co.* v. *Pater,* 15 F.2d 737 ; and *Business Men's Assurance Co. of America* v. *Campbell, supra,* it was decided that the suppression of a rejected life insurance application did not have that same effect in the case of an application for accident insurance, and held that the materiality of prior rejections of life insurance was a question of fact for the jury.

In *Business Men's Assurance Co. of America* v. *Campbell, supra,* plaintiff was a beneficiary under an accident and health policy issued by defendant company. Defendant pleaded that the policy was null and void because of false statements made by the insured in his application. The question there asked was similar to the one in the instant case, to which the insured answered ''No.'' It developed that he had previously applied to a life insurance company for a life policy which was declined on account of high blood pressure. The Circuit Court of Appeal stated (p. 997) :

''We do not believe the proposition that rejection of an

applicant for a life policy is material as matter of law to the assumption of the risk in an accident and health policy, is sustainable. The risks are substantially different, and the facts which cause a rejection of the former may or may not increase the risk of the latter; and so it becomes a question of fact and not one of law. As said in *Missouri State Life Ins. Co. v. Pater* (C.C.A.) 15 F.2d 737, epileptic attacks strongly predispose to accidents. That fact increases the risk in both classes,—life and accident,—likewise as to many other ailments and infirmities; but many others do not."

A writ of certiorari was denied in that case (280 U.S. 594 [50 S.Ct. 40, 74 L.Ed. 642]. See, also, *Columbian Nat. Life Ins. Co. v. Harrison, supra.*)

It has been repeatedly held that where the evidence is of such a character that reasonable men may reach different conclusions as to the materiality of the false representations, the question is one of fact for the jury. (*Wharton v. Aetna Life Ins. Co.*, 48 F.2d 37; *Mutual Life Ins. Co. v. Hatten*, 17 F.2d 889.)

In 148 A.L.R. 912, the prevailing rules in the several jurisdictions are discussed. It is there said:

"In some states, statutes provide that all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties. Under such a statute, the falsity of statements which, according to the terms of the policy, are to be treated as warranties will avoid the policy if fraudulently made, irrespective of their materiality; but if statements in the nature of warranties are false and there is no showing of fraud, they will avoid the policy only if material. See 29 Am.Jur. 442, Insurance, sec. 547. Concealment, in order to avoid a policy of insurance, must involve a matter material to the risk, at least where there is no provision in the policy which can be permitted under the statute applicable in the jurisdiction to be regarded as a warranty. See 29 Am.Jur. 436, 437, Insurance, sec. 540."

Section 10380 of our Insurance Code, under the chapter relating to *disability policies*, provides: " . . . the falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery under the policy, unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Section 10113 of the same code provides in part: " . . . and

all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties. Any waiver of the provisions of this section shall be void." See, also, 119 A.L.R. 779; *Boyer* v. *United States Fidelity & Guaranty Co.*, 206 Cal. 273 [274 P. 57]; *Wilson* v. *Maryland Casualty Co.*, 19 Cal.App.2d 463 [65 P.2d 903]; *Pierre* v. *Metropolitan Life Insurance Co.*, 22 Cal.App.2d 346 [70 P.2d 985]; *Adams* v. *Policy Holders Life Insurance Association*, 126 Cal.App. 535 [14 P.2d 775]; sections 331, 332, 334 and 338 Insurance Code.

From the authorities cited and the provisions of our own statutes, it appears that the question of the materiality of the claimed misrepresentation was one of fact and not of law. ▉ Under either construction, in view of the findings, plaintiff would not be entitled to recovery. The trial court found, in effect, that there was a material misrepresentation in failing to disclose in the written application that plaintiff had been previously rejected on a life insurance policy by another company and that by reason of such failure to disclose such prior rejection defendant was entitled to rescind because defendant association relied upon the statement made by plaintiff, and in reliance thereon issued the policy herein described. In view of this finding of fact, which is supported by the evidence, we are unable to order a reversal of the judgment. The trial court was the sole judge of the credibility of the witness and could believe all of his testimony or believe a part and reject parts, as it was convinced of the truth or falsity of such testimony. (*Whitechat* v. *Guyette*, 19 Cal.2d 428, 434 [122 P.2d 47].) We are again confronted with the rule that, in passing upon the merits of an appeal, an appellate court will and must accept as true all evidence tending to establish the correctness of the findings and must consider the evidence in the most favorable aspect toward the prevailing party and give that party the benefit of every inference that can be reasonably drawn in support of his claim. (*Cope* v. *Goble*, 39 Cal.App.2d 448, 453 [103 P.2d 598].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1946. Carter, J., voted for a hearing.